[No. 34429.   Department One.   September 11, 1958.]

CONTAINER CORPORATION OF AMERICA, *Respondent,* v. HERMAN H. GORLICK et al., *Appellants.*[1]

[1]Reported in 329 P. (2d) 659.

836

*Frederick Paul*, for respondent.

*Franco & Bensussen*, for appellants.

MALLERY, J.—The plaintiff, Container Corporation of America, sued the defendants for the purchase price of goods alleged to have been sold to them and delivered to another corporation, the Northern Manufacturing Co. From a judgment for the plaintiff, the defendants appeal.

Appellant Gorlick is a partner in Thrifty Supply Co., hereinafter called Thrifty, and a one-third owner of the stock of Northern Manufacturing Co., hereinafter called Northern, which was in receivership at the time of trial. Respondent corporation manufactures custom-made cartons used in shipping articles. In March or April, 1955, respondent's agent Christiansen began negotiations with Clark Cadwall, the manager of Northern, for a supply of specially manufactured cartons in which to ship Northern's hot-water tanks. On July 21, 1955, Cadwall placed an order with Christiansen subject to final approval of the art work for the outside of the cartons. Cadwall was called into the military service and, before leaving, directed Christiansen to complete negotiations with Gorlick. Gorlick told Christiansen that he had purchased cartons from another source, so Christiansen canceled the order. As these cartons proved to be too large for the tanks, John Johnson, who had succeeded Cadwall as manager of Northern, contacted Christiansen about October 1, 1955, regarding some pads with

which to adapt the cartons to the tanks. Christiansen then informed Johnson that, because of Northern's financial standing, the respondent would not deal with it on credit. Johnson told Christiansen that he would contact Gorlick, a partner in Thrifty, or a Mr. Drebin and see what could be done about it. Drebin is the full-time employee of Thrifty and the part-time bookkeeper for Northern. Johnson contacted them by phone and explained the situation. He then told Christiansen that Gorlick had said the transaction would have to be handled by shipping the goods to Northern, billing Thrifty for them, and *to see Gorlick about it.* Christiansen then entered two orders for pads of different sizes on October 18, 1955, *without contacting Gorlick.*

In the normal course of business before putting the goods in manufacture, respondent mailed acknowledgments of the receipt of the two orders to Thrifty. One acknowledgment was sent on October 19, 1955, and the other on October 20, 1955. They stated that the goods were sold to Thrifty and were to be delivered to Northern. There was no response to these acknowledgments, and Gorlick testified he did not see them before delivery of the goods. One order was delivered on October 28, 1955, and the other on October 31, 1955. On the latter date, the respondent mailed a bill for the goods to the appellants.

About November 7, 1955, Drebin called respondent to protest the billing, claiming Thrifty had not ordered the goods and was not responsible for the order. This action resulted from their inability to agree upon the matter.

The trial court held that Johnson, the manager of Northern, was the duly authorized agent of appellants, and that appellants were estopped to deny his authority to contract for them, to which appellants assign error. The assignment is well taken.

The extent of Johnson's authority to act for the appellants was to relay the information to Christiansen that the transaction would have to be handled by billing the goods to Thrifty and *to see Gorlick about it.* Christiansen thereupon entered the orders for the goods with respondent, *but did not contact Gorlick.* Thus, there was no contract

with Thrifty because of either of two reasons: (1) If Christiansen understood the message, he disregarded the specific direction to see Gorlick about the transaction, which was a condition precedent to the formation of a contract. (2) If he did not understand Johnson's message to see Gorlick, there was not a meeting of minds with Johnson and, hence, no contract. This mistake is, of course, attributable to his principal, the respondent, not to the other contracting party, whom he did not represent.

We think the record does not support the existence of an estoppel as to appellants' right to deny Johnson's authority to contract for them. Christiansen testified, on cross-examination, that no one from Thrifty led him to believe it would be responsible for the debts of Northern, or that Johnson had authority to purchase in Thrifty's name. It cannot be said that Christiansen entered the orders in reliance upon any representations as to the extent of Johnson's authority to act for Thrifty and Gorlick.

Respondent contends, in support of an estoppel, that appellants had a duty to disavow their liability before delivery of the goods, because it mailed acknowledgments of the orders to them. Gorlick disclaims any knowledge of the acknowledgments of the orders until after he received the bill in November, 1955, for the goods already delivered to Northern. There is no estoppel for want of actual notice. This is not a case where notice by mail between parties to a contract has been agreed upon or where statutory notice is involved. Here the parties were strangers. Appellants had no duty to speak before they had actual notice of respondent's contemplated course of action. They cannot return the goods because they did not receive them. They are not liable for the goods shipped to Northern.

The judgment is reversed.

HILL, C. J., FINLEY, OTT, and HUNTER, JJ., concur.

December 19, 1958. Petition for rehearing denied.